Good morning, your honors. May it please the court, my name is John Alcorn and I am counsel for Petitioner. I've represented Petitioner in various proceedings over the last eight year history of his case, which is outlined by both government counsel in their reply brief and by us in our initial and subsequent briefs. In any event, I'd like to point out what I think are the three biggest weaknesses in my case for my client. Not in my client's case, in my case for my client. First, we argued in our brief to this court that our client had not conceived removability. In looking over the transcripts of the very first immigration court hearing in which one of my associates was present representing the petitioner at my direction, I find that after the judge had found my client removable, she did agree. She did say, well, we agree with that. So even though she did not concede allegation number six in the notice to appear, she did say the words, we concede removability. So you're withdrawing the argument in your brief that it was not conceded? Well, not entirely. It's a little murkier than that. I don't think you're clarifying it by putting it that way. What happened? What's your position on what happened? She tried to preserve appeal by not conceding allegation number six. I understand, but she was told she couldn't do that. So legally, what do you think the effect was of your position before the IJ? Well, we did appeal, and we got a remand from the BIA, and we went back to immigration court to a second immigration judge. So I think we've reserved the basic appeals and the rights throughout this whole eight-year history. But that's a weakness in my case, that she said the words on the transcript, well, we do concede removability. I'm not denying that she said those words. The counsel said that, and that's sufficient under our case law. It is, trust me. Can I go on to my second weakness as I see it? Yes, but maybe you want to get to your strengths. Let me ask you something. Sure. So by my calculation, and I think others' calculation, your client has one day left of voluntary departure time. So if your client were to leave the country while this case is pending, he would not be subject to a reentry bar in trying to come back, either the three-year or the ten-year. So there must be some reason that, I mean, it seems to me that that's... There's two reasons why we're fighting this. All right. There's two reasons. You don't have to give me your reasons, I mean, your advice to your client. I'm just pointing this out as a fact. I agree with you, Your Honor, totally. Okay. If he were to leave, even with voluntary departure, I don't think a U.S. counsel practically will ever issue a new visa for him, even if we get a prior approval of a visa petition by USCIS. I think they will hold that against him for practical effect. And the second point... You mean he needs to get a visa in a foreign country, right? Right. Why do you think, as a practical matter, that would not be possible? Is that revenge? Is that what you're saying? Sort of, but not exactly. The fact that he's been here so long and fought so hard, I think, makes his legal history pretty murky in the eyes of a counsel, and they have a duty, whenever they doubt somebody's bona fides and somebody's non-immigrant intent, to deny a visa. Okay. But at least you concede the point that he'd have a day, if he went back, to try. There may be practical difficulties with that, but he could try that, right? Absolutely concede that point. Okay. And then my next question to you is, why does any of this matter? Because as I'm reading the record, you've got the denial by the AAO in, I think it was November of 2005, so that even if we gave you all the relief you're seeking here, if we decided you did have a stay pending all these appeals, your time was not accruing, you're still six years over from the date that it was denied. That's right. I agree with all of that, too. The other part of the analysis why we're fighting this is because we believe his initial arrest was illegal, and that he did have a constitutional right under the Sixth Amendment to due process to exhaust his remedies, and the BIA on the second go-around said they would not address my remarks in that regard, which I knew, because they said they don't have the authority, which I agree with. And so we've been waiting to get to this court to see if you might agree that constitutional due process applies to this situation. But if we did, what have you obtained? Well, if you did, you might remand to the BIA with instructions to terminate the whole case, in which he would not have an order of voluntary departure with an alternate order of removal. But he would have no status. I mean, following your logic, he has no status. His H-1B visa was denied. Was denied. He has no status. True. And it might be interpreted, I think, wrongly that he's subject to the 10-year bar. Well, my point to you is there's a way around that. Just to have him go. Well, he has voluntary departure, which is a form of relief. Well, if we would have had him go before we brought the petition for review to this court, I think his departure would have constituted an abandonment before the BIA and the AAO and DHS and the whole alphabet soup of agencies. I could see your argument if he had status and had a motion to extend, and that was pending. Right. When he has no status. Right. And that was determined by the AAO when they denied on appeal the H-1B, at which point we had already brought it to the BIA. So even though I practiced immigration law for many years, I felt constrained to carry on with this, and I wasn't fighting my client or telling him you must stay here, but I said I think we have a legitimate case here before the Ninth Circuit. Well, you sent us this case from the District of Connecticut. Yes, sir. And Judge Hall wrote a pretty interesting opinion. I spent a good part of the morning reading it. My question, I guess, is a question of whether judge-made law can take the place of no law at all. Isn't your client somewhat like a person in a Canadian surgery? And if they ever get around to making an appointment, the patient may get surgery, but the patient may die before they ever get around to taking up the case. Isn't that sort of where your client is? It is sort of where my client is. I agree. Now, I'll ask the government, as Chief Justice Warren would, is it fair? But even if it isn't fair, isn't that the kind of law that needs to be made by the legislature rather than by the court? Well, I might agree with you politically, but I'm an advocate for my clients, and I'm before a court, and it's my duty to advocate. So that might be the best form if Congress would take that up and straighten out some of these contradictions and loopholes in very complicated immigration law. But we're stuck with what Congress has done, and we're stuck with what the regulations are the way they are today. We're stuck in the sense that they are what they are. And, of course, I like the U.S. District Judge in Connecticut. I like that decision. He did grant summary judgment for the plaintiff. Janet. She did, yes. Thank you, Your Honor. Janet Hall. Janet did. Janet Hall, yes. And I think she found the Sixth Amendment right. But anyway, that's why we're all here. So I appreciate your questions and comments. I will not reserve my – I will sit down but not reserve my time. If you have more questions for me, I'll be right here. Thank you. You may want to reserve just in case you have something to say in response to the government. I'd rather – okay. Thank you, Your Honor. May it please the Court. Timothy Hayes again on behalf of the Attorney General. I'm going to rest on the brief and then take questions because, frankly, I'm not sure what we're even arguing here. She was – he was found – or, excuse me. He was found removable below and conceded removability. And the Board affirmed that and remanded back to the immigration judge because the first immigration judge erroneously made a determination that he wasn't eligible for post-hearing voluntary departure. Didn't your brief point out that if he left now that – he would have the opportunity of reapplying for a visa without facing the bar, the reentry bar? I don't know if that's true anymore, Your Honor. A-9 – he would be all right because he has voluntary departure now. He has voluntary departure. And it's pre-09. He has one day after the issuance of the mandate in this case. Because a stay was issued when this case was filed. Right. Right. So the A-9C bar wouldn't apply. But there's that A-9B bar which talks about the accrual of unlawful presence. And that still applies regardless of a stay issued by the court because he overstayed his non-immigrant visa. That starts the day after the I-94 expires unless he files a change of status or an extension of status concurrently to extend that. Then you get a period of time while that is being adjudicated where you're considered – Well, I'm sure it wasn't intentional, but I think your brief then is a little bit misleading on this point. I read it as a concession by the government that the stay having been issued by this court, there was going to be up until one day after the mandate issues from this court in which he could leave voluntarily without running into the bars. And I would be so bold as to suggest to Appellant's Counsel that you might really want to do that because it might be bad not to do that. And if he did that, then it would be the concession that we have in the brief, which I expected you to repeat here, that yes, that will be the position of the government if indeed there's a reapplication. He might or might not get the T-2, but he's going to have that day to avoid the bar. Are you backing off that? You're right, Your Honor. What I am explaining is there was a memorandum that was issued by the Department of Homeland Security in May 2009 which sort of changed things around a little bit. Well, wait a second. You didn't notify the court of that? Because it's a... You haven't changed this brief. You haven't... Right, Your Honor. Because it's not part of the administrative record. It would have to go back to the agency for that to be filed through Motions Reopen. And the reason why I didn't file it is... It's authority, isn't it? It's an internal agency memorandum. It's not law. I see. And that's exactly why I would have said you could take judicial notice of it and provide it copies, but it's not law. It's just an internal agency memorandum. And it says what? It was just what I was explaining before, that they draw a distinction between unlawful status and the accrual of unlawful presence. Like, you can't accrue unlawful presence if you're in unlawful status. If you're in unlawful status, you may or may not be accruing unlawful presence. And the exception they draw is in 1182A9B or C, there's a tolling provision that says, if you file for a change of status or an extension of status, we'll give you 120 days. We don't consider you. You might not be in unlawful status here, but you're not going to be accruing unlawful presence. And the agency, by administrative policy, has decided that since it oftentimes takes them longer than four months to adjudicate those. So that effectively would do away with this right to appeal? How so, Your Honor? Well, I mean, because he'd be penalized for appealing and staying in the country to pursue his appeal from the order of removability. See, he's been in proceedings all this time. He's been in removability. No, actually. I guess what you're saying is it's not that he's losing his appeal. It's that the stay that this court issued is not going to be given effect by the government, right? Under A9B, it's a little different. Under A9C, it does give complete effect, yes, Your Honor. I don't understand how the DHS can say that our stay isn't. Well, I believe it does. This is just going off the 09 memoranda, which is prospective, which incorporates the regulation. I think that the stay that was given in 07 covers all this, where he will not have unlawful status until the court issues its mandate. Let me be clear about that. If he leaves now, he is not subject to the bar. Is that right? Is that the same as saying he will not have unlawful status? It's not this. He will not be subject to the bar. No, that's right, Your Honor. But it's not to say that he has lawful status in this country at this time. Rich, are you making a distinction between unlawful status and unlawful presence? Yes, exactly, Your Honor. And I apologize if I'm being confusing. The terminology is just ridiculous. But, yeah, there is a distinction. Yeah, and I read over the memoranda four times, and I was still confused by it. But what's the effect of accruing unlawful presence? The effect of accruing unlawful presence is tied to A3B or A9, excuse me, 1182A9B, which is an immiscibility bar. So you have to get a waiver for that bar in order to be immiscible into the United States. And the waiver is available to someone whose spouse, if their spouse is a U.S. citizen or unlawful permanent resident, or if their parent is a U.S. citizen or unlawful permanent resident. And how long is that in effect? It depends on the length of time. In this case, I believe it would be. . . So you're saying he's accruing unlawful presence since what date? Since the date that DHS issued that memo? Well, in this case, I don't think he is because this is all based on the 09 memo, and the court issued its day in 07. But normally, under normal circumstances. . . I apologize, Your Honor. We have to decide this case. I know. I know. Can he apply without facing any bar? Or is there a bar that you would say would exist? There may be a bar under A9B. You're just saying that based on the 09 memo, which you don't think applies to him, because it was issued this day in 07. Right. So I take it that you as the advocate for the service at this point are not prepared to take the position that there is no bar. I can't say that definitively at this point. Okay. All right. Well, then I have another question, which is I think we better get to the ultimate merits, which is whether there is a constitutional requirement for the non-accrual during the time that he's appealing to the AAO. Why don't you address that briefly? I don't see the prejudice from that point, Your Honor. You can pursue an AAO appeal without being in the country. It doesn't automatically withdraw the appeal. It's not like a motion to reopen where if you depart, in most cases, although the departure bar is sort of changing now, it's an automatic withdrawal. So it has no effect on the appeal. And service policy, including the Pearson memo, which is in the record. I believe it's at pages, let's see, the Pearson memo is at pages 235 to 237. The Pearson memo discusses how they'll give you an unlawful presence for, they'll give you automatic, they won't count unlawful presence against you while you have your appeal, while you're filing your appeal. While your appeal is pending. Right, right, right. If you win. Well, no, not even if. I see. The appeal. Excuse me. It's not your appeal. I'm sorry. If, okay, your status expires tomorrow, but you file a change of status application with the service. You will not be accruing unlawful, as long as it's not frivolous, you will not accrue any unlawful presence during that time, even if they deny it. Now, if they deny it, and then you try to appeal that to the AAO, you are accruing unlawful presence. So you accrue from the date of denial. Right. If you file for an extension of stay. If you don't, then it's immediately the day after your authorized stay expires. And that's true for the motion for reconsideration and the appeal. Right, and the appeal. If you win either of those, it's retroactive. But if you don't win either of those, the time has been right. Yes, Your Honor. That's exactly how it is. And that's how, as far as I know, that's how it's always been. The 09 memo and the Pearson memo that's in the record is the same way. Okay. Any other questions, Your Honors? Well, I guess the only other question I want to ask then is, are you constitutionally required to continue the nonaccrual during a motion for reconsideration and an appeal? No, Your Honor, because if there was error, it would be corrected either by granting the motion to reconsider or granting the appeal. And the policy has always been that they're going to retroactively grant you authorized status through that entire period if it's reversed. So there's no prejudice in any of those instances. Okay. And one other point I just want to get clear. There's nothing that's disqualifying about after you lose your application for change of status and you appeal. You don't have to stay in the country. You can voluntarily depart during that time, and your lawyer can handle the appeal, and you'll be safe from accruing any time as long as you're out of the country. It depends exactly if you're appealing, but generally, yes. Let's take this one. Okay. This one. All right. We'll take this one. Is TN-2, if he files to extend the status, he has to be here the day he files. But if he leaves, that's fine because if they grant it, he can go to the consulate in a foreign country and pick it up. If he's outside of the country and he files an AAO appeal, that should still be fine because there's no automatic withdrawal of appeal while that's pending. It's not like the board. The AAO deals with visas and things where they don't expect the applicant to always be in the country. All right. Thank you very much. Do you have anything further? It seems to me that the government's pretty confused with all of these different regulations and procedures, as I know a counsel would be, and my client and his family are in the back row. They have no qualifying relative to ask for a waiver if they are subject to the 10-year bar. So I'm hoping this court will give a definitive ruling on these issues, and I thank you all very much. All right. Thank you very much, counsel. The case of Villasenor v. Holder is submitted.
judges: Cogan, Goodwin, Wardlaw